**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JIMMY LEE BROOKS,

    Defendant - Appellant.

No. 24-6034

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:20-CR-00113-G-1)**

_____

Submitted on the briefs:[*]

Ryan J. Villa of The Law Office of Ryan J. Villa, Albuquerque, New Mexico, for Defendant - Appellant.

Nick Coffey, Assistant United States Attorney, (and Robert J. Troester, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Following a jury trial, Defendant-Appellant, Jimmy Lee Brooks, was convicted of being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1), and witness tampering, 18 U.S.C. § 1512(b)(1).  Mr. Brooks now appeals from his sentence, challenging the district court's application of the sentencing guidelines' cross-reference to § 2A2.1 on the ground that there is insufficient evidence that he acted with the specific intent to kill.  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## Background

On March 18, 2020, the Oklahoma City Police Department (OCPD) responded to a shooting at Mid-K Beauty Supply (Mid-K) in Oklahoma City.  II Supp. R. 70. Mid-K's surveillance footage shows Mr. Brooks becoming irate when another man hugged S.J., Mr. Brooks's then-girlfriend.  Id.  When Mr. Brooks became visibly upset, S.J. left the store.  Id.  Mr. Brooks then pulled a large knife from his person and paced around for several minutes before also exiting the store.  Id.  Outside in the parking lot, an argument ensued between Mr. Brooks and S.J., and Mr. Brooks seemed to threaten S.J. with the knife.  Id.  S.J. locked herself in a Chevrolet Impala, which Mr. Brooks attempted to break into by punching a window.  Id.  S.J. exited the Impala and got into a nearby vehicle driven by Hycinthia Thompson.  Id.; III Supp. R. 368–71.  As Ms. Thompson drove away, Mr. Brooks reached inside the Impala, grabbed a firearm, aimed towards her vehicle, and fired several rounds.  II Supp. R. 70.  Mr. Brooks then drove off in the Impala.  Id.  Responding OCPD officers found eight shell casings in the Mid-K parking lot.  Id.

2

S.J. self-reported to the Midwest City Regional Hospital with a gunshot wound.  Id.  A bullet had entered Ms. Thompson's car through the license plate and struck S.J. in the buttocks.  Id.  After a search, OCPD officers found Mr. Brooks's cousin's apartment.  Id. at 71–72.  His cousin relayed that Mr. Brooks was previously at the apartment, that he had stated his intent to kill S.J. and her family, and that he brought a 12-gauge shotgun inside.  Id.

Mr. Brooks was arrested on March 26, 2020.  Id. at 72.  A superseding indictment charged him with being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1) (Count 1); being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 2); and witness tampering, 18 U.S.C. § 1512(b)(1) (Count 3).[1]  II R. 6.  After trial, a jury found Mr. Brooks guilty on Counts 1 and 3 but acquitted him on Count 2.  I Supp. R. 664.

Mr. Books was sentenced to 235 months' imprisonment (120 months for Count 1 and 235 months for Count 3 to be served concurrently), followed by 3 years' supervised release.  Id. at 746–47.  He appealed from that sentence, arguing that the district court erred by finding that he attempted second-degree murder and applying a cross-reference to U.S.S.G. § 2A2.1, which sets the base offense level at 27 for

---

[1] The witness tampering charge was based on Mr. Brooks's recorded jail calls with S.J., during which he threatened her and demanded that she testify at his trial that someone other than Mr. Brooks shot her.  II Supp. R. 73–75.

3

attempted murder.[2]  I R. 24.  He asserted that the attempted murder cross-reference

could not be applied without finding that he acted with a specific intent to kill rather

than malice aforethought.  Id.  This court agreed, holding that "a defendant can only

be sentenced under § 2A2.1 if he intended to kill."  United States v. Brooks, 67 F.4th

1244, 1253 (10th Cir. 2023).  We vacated Mr. Brooks' sentence and remanded for

resentencing.  Id.

On remand, the district court imposed the same sentence.  I R. 146–47.  With

respect to the § 2A2.1 cross-reference, the court found "by a preponderance of the

evidence that Mr. Brooks shot at S.J. with the specific intent to kill her."  III R. 22.

In denying Mr. Brooks' objection to that cross-reference, the court emphasized

factual findings from both sentencings, noting that Mr. Brooks confronted S.J. with a

knife during the dispute, aimed a gun at her, and "fired toward her at least eight

times, hitting her once."  Id. at 21–22.  Mr. Brooks now appeals the remand sentence.

I R. 152.  He argues that there was insufficient evidence to support the finding that he

acted with the specific intent to kill.  Aplt. Br. at 10.  We disagree.

## Discussion

"[W]e review legal questions regarding the application of the Sentencing

Guidelines de novo, and a district court's factual findings are reviewed only for clear

error, giving due deference to the district court's application of the Guidelines to the

---

[2] Mr. Brooks also argued that the district court erred by applying a heightened
base offense level on the assumption that Oklahoma aggravated assault and battery is
a crime of violence.  I R. 24.  That argument is not at issue in this appeal.

facts." United States v. Finnesy, 953 F.3d 675, 688 (10th Cir. 2020) (quotations omitted). Section 2K2.1(c)(1) of the guidelines directs courts to apply § 2X1.1 "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense[.]" U.S.S.G. § 2K2.1(c)(1). Section 2X1.1(c)(1) provides that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." Id. at § 2X1.1(c)(1). Accordingly, finding that Mr. Brooks attempted second-degree murder, the district court applied U.S.S.G. § 2A2.1, "Assault with Intent to Commit Murder; Attempted Murder," yielding a base offense level of 27. Id. at § 2A2.1(a)(2); III R. 21–22.

Mr. Brooks briefly asserts that the record does not support the district court's finding that he was the shooter. Aplt. Br. at 18; III Supp. R. 681. Although Mr. Brooks disputed this finding at the first sentencing, he did not challenge it in the first appeal, nor did he raise it on remand. III Supp. R. 681; I R. 23–39; III R. 12–13. Regardless, there is ample evidence that Mr. Brooks was the shooter. The jury found, beyond a reasonable doubt, that he possessed ammunition. I Supp. R. 664. Moreover, the surveillance footage shows Mr. Brooks aiming and firing what appears to be a gun towards Ms. Thompson's vehicle as she drove away with S.J. (who was ultimately shot) in the back seat. See 21-6059, "Surveillance Video from Outside Mid-K." And OCPD officers found eight shell casings in the Mid-K parking lot after the altercation. II Supp. R. 70. Ms. Thompson's testimony also supports the finding that Mr. Brooks fired the round that wounded S.J. III Supp R. 369–73.

"[S]entencing facts . . . need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008) (quotations omitted).  Here, the district court's finding is well-supported by the evidence.

Mr. Brooks also claims that the record lacks factual support that he acted with the specific intent to kill, as opposed to recklessness.  Aplt. Br. at 18.  We disagree. Intent can be established by circumstantial evidence.  United States v. Oloa, No. 22-6046, 2022 WL 17663807, at *5 (10th Cir. Dec. 14, 2022).[3]  In United States v. Smith, we considered a similar argument after the district court applied the same cross-reference.  No. 23-1314, 2024 WL 3841849, at *1–2 (10th Cir. Aug. 16, 2024). There, several men threatened the defendant at his workplace and, despite attempts to restrain him, the defendant followed the men outside where a gunfight occurred.  Id. at *1.  The district court found that the defendant had the specific intent to kill because, after the initial encounter, he "elected to pursue the suspects, restart the altercation, and ultimately and shortly thereafter fired his gun" toward the suspects. Id. at *2.  We affirmed, noting that "firing a gun at another can support an inference of an intent to kill."  Id.; see also United States v. Alexander, No. 20-6154, 2022 WL 2763689, at *7 (10th Cir. July 15, 2022) (affirming finding of specific intent to kill where defendant fired at victim while victim tried to escape).

This case is analogous to Smith.  See 2024 WL 3841849, at *1–2.  After the

---

[3] Although not precedential, we find the reasoning of this and the other unpublished dispositions cited in this opinion to be instructive.  See 10th Cir. R. 32.1; Fed. R. App. 32.1.

initial altercation inside the store, Mr. Brooks paced around for several minutes with a large knife, exited the store, argued with S.J. in the parking lot, and attempted to punch out the car window. See 21-6059, "Surveillance Video from Inside Mid-K" & "Surveillance Video from Outside Mid-K." When S.J. tried to escape in Ms. Thompson's car, Mr. Brooks "elected to pursue" S.J. further and "restart[ed] the altercation" by reaching for a firearm and chasing after the car. Smith, 2024 WL 3841849, at *2; see 21-6059, "Surveillance Video from Outside Mid-K." Mr. Brooks then fired several rounds in S.J.'s direction, one of which ultimately struck and injured her. See Smith, 2024 WL 3841849, at *2; III R. 22. This establishes, by a preponderance of the evidence, that Mr. Brooks specifically intended to kill S.J.

Mr. Brooks claims that the footage is poor quality and lacks corroboration. Aplt. Br. at 15. To the contrary, "[t]he videotape quite clearly contradicts the version of the story told by" Mr. Brooks. Scott v. Harris, 550 U.S. 372, 378 (2007). To be sure, a gun is not clearly visible in the video, a point which the government concedes. Aplt. Br. at 18; Aplee. Br. at 16. As defense counsel acknowledged, however, "the video shows the shooter jumping up and down as shots are being fired." III R. 12–13. This is corroborated by Ms. Thompson's testimony that she saw the altercation, and that S.J. stated that Mr. Brooks had a gun right before she heard several gunshots, one of which hit S.J. III Supp. R. 370–72; Aplt. Br. at 18. And shortly thereafter, eight shell casings were found in the Mid-K parking lot. II Supp. R. 70. Because this evidence suffices to establish, by a preponderance of the evidence, that Mr. Brooks acted with the specific intent to kill S.J., the district court did not err.

7

AFFIRMED.